IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GEOFFREY MICHAEL WILLIAMS,

    Plaintiff,

CV 12-634-PK

FINDINGS AND
RECOMMENDATIONS

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

PAPAK, Magistrate Judge:

    Plaintiff Geoffrey Michael Williams filed this action April 11, 2012, seeking judicial review of the Commissioner of Social Security's final decision denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). This court has jurisdiction over plaintiff's action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). I have considered all of the parties' briefs and all of the evidence in the administrative record.

For the reasons set forth below, the Commissioner's final decision should be reversed and remanded for further proceedings consistent with these Findings and Recommendations.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge ("ALJ") considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); *see also Bowen*, 482

U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f). In the event the claimant is

no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets its burden to demonstrate that the claimant is capable of performing jobs existing in significant numbers in the national economy, the claimant is conclusively found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet its burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* The court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins*, 466 F.3d at 882;

*see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## BACKGROUND

Williams was born on July 8, 1990. Tr. 136.[1] He speaks English and received special education services in school, and has held only temporary jobs. Tr. 37, 40, 157. Williams applied for SSI on June 25, 2009, alleging disability due to a learning disability, ADHD, sleep disorder, nerve condition causing hives, and back pain. Tr. 136-39, 157. He alleged that his disabilities began at birth. Tr. 40-41.

On August 11, 2009, Williams' aunt, Mandy Herford, completed a Function Report questionnaire describing Williams' limitations. Tr. 165-72. She stated that Williams needs reminders to take his medications and is unable to maintain focus without close supervision. Tr. 165, 167. Ms. Herford also stated that Williams has difficulty with reading comprehension, and sometimes hears things that others do not hear. Tr. 169-70. She stated that Williams handles stress poorly, and needs constant reminders to complete chores. Tr. 170-71.

Williams' most recent medical examination documented in the record was November 4, 2009, when he was examined by Dr. Gary Sacks. Sacks assessed Williams' full scale IQ at 79, in the borderline range. Tr. 356. Sacks opined that Williams' diagnoses included conduct disorder, PTSD, borderline intellectual functioning, and a GAF score of 52. He also opined that Williams' limited math skills would make it difficult for him to handle funds independently. Tr. 357.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 10.

5 – FINDINGS AND RECOMMENDATIONS

Williams received treatment for depression and PTSD from a licensed professional counselor at Western Psychological and Counseling Services. Tr. 411. On January 28, 2010, Williams' counselor reported that he has poor judgment and impulse control. Tr. 412. Williams reported nightmares and complained of unwanted side effects from Zoloft. Tr. 418, 938.

On April 4, 2010, Dr. Deane De Fontes examined Williams for the Multnomah County Health Department. Williams reported to De Fontes that he did not like taking his mental health medications because they made him feel "funny." Tr. 936. Williams agreed to try Effexor to manage his mental health symptoms. Tr. 936. From March, 2010 through January, 2011, Williams was treated for symptoms of PTSD and ADHD. Tr. 946-59.

On December 2, 2010, Occupational Therapist Two Foxes Singing completed a Work Skills Evaluation on behalf of Williams. Tr. 943. Singing noted that Williams has poor money management skills and was not able to successfully complete the work skills program. Tr. 943. He opined that Williams scored poorly on interpersonal skills and had difficulty getting along with peers and supervisors. *Id.*

After the Agency denied his initial SSI application, Williams requested a hearing before an ALJ. Tr. 94-96. A hearing was held on April 12, 2011, before ALJ Riley Atkins. Tr. 29-73. At the hearing, Williams testified that he attempted vocational rehabilitation but did not complete the program because he did not get along with his supervisor and was sent home several times for rule violations. Tr. 36. Williams also reported problems with memory, reading, writing, punctuation, and math. Tr. 38. He stated that his mental limitations prevented him from working, but agreed that he was physically healthy; he was able to manage his back and knee problems with Ibuprofen and testified that they did not prevent him from performing physical

6 – FINDINGS AND RECOMMENDATIONS

labor. Tr. 42. He testified that he is easily distracted because of his ADHD and needs close supervision in order to stay focused in a job setting. Tr. 43.

Williams' mother, Margaret Williams, also testified at the hearing. She noted that Williams has difficulty finishing tasks and getting along with family members and supervisors. Tr. 59, 61. She also testified that Williams cannot understand job applications "at all." Tr. 66. Ms. Williams explained in a letter that Williams is afraid to take medications, use the stove, and has problems understanding job applications. Tr. 189. Her letter also stated that Williams has difficulty communicating and relies on her for help. Tr. 190.

ALJ Atkins issued a decision finding Williams not disabled. Tr. 11-23. The Appeals Council denied Williams' subsequent request for review, and this action followed. Tr. 1-5. *See* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000).

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the Administrative Law Judge found that Williams had not engaged in substantial gainful activity at any time following the alleged onset date. Tr. 16.

At the second step, the ALJ found that Williams had the following severe impairments: dysthymic disorder, post-traumatic stress disorder ("PTSD"), borderline intellectual functioning, conduct disorder, and alcohol and cannabis abuse. Tr. 16. Because the combination of impairments was deemed severe, the ALJ properly proceeded to the third step of the analysis.

At the third step, the ALJ found that none of Williams' impairments met or equaled any of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1. Tr. 17. The ALJ therefore conducted an assessment of Williams' residual functional capacity ("RFC"). *Id.* Specifically, the ALJ found that during the relevant period Williams had the RFC to perform "a full range of

work at all exertional levels but with the following nonexertional limitations: He is limited to simple repetitive work with no public contact." Tr. 18. In reaching these conclusions, the ALJ considered all of the objective medical evidence in the record, as well as Williams' own statements regarding his symptoms. Tr. 18-22.

At the fourth step of the five-step process, the ALJ found that Williams has no past relevant work. Tr. 22. At the fifth step, the ALJ found Williams could perform the occupations of laundry laborer sorter, cleaner II, and hand packager, which exist in significant numbers in the national economy. Tr. 22-23. This finding was based on the testimony of a vocational expert ("VE"). *Id.* Based on his step five finding that Williams could perform jobs existing in significant numbers in the national economy, the ALJ concluded that he was not disabled. Tr. 23.

## ANALYSIS

Williams argues that the Commissioner erred because he (1) improperly evaluated his credibility; (2) improperly evaluated the "other source" evidence in the record; and (3) failed to include all of his limitations in the hypothetical to the VE. Because the Court finds that the ALJ erred by omitting credible limitations from the RFC, the Commissioner's decision should be reversed and remanded for further proceedings consistent with these Findings and Recommendations.

### I.   The ALJ's Credibility Finding

Williams argues that the ALJ improperly rejected his subjective symptom testimony based on an adverse credibility finding. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ

8 – FINDINGS AND RECOMMENDATIONS

"must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and

9 – FINDINGS AND RECOMMENDATIONS

any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider ... ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, ... other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 949 (9th Cir. 2002).

The ALJ rejected Williams' credibility because of his conservative treatment record, failure to seek treatment, and because his daily activities belied his subjective symptom testimony. Tr. 19-20. First, the ALJ also noted that Williams received "only conservative routine treatment." Tr. 19. Conservative treatment can be "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). For example, the record reflects that Williams had never been hospitalized for any significant period of time. The record contains no evidence of any significant side effects from his medication, beyond some "weird" feelings caused by Zoloft.[2] Tr. 19-20, 938. The ALJ thus properly inferred that Williams exaggerated regarding the severity of his mental limitations. *Parra*, 481 F.3d at 750-51.

---

[2] De Fontes opined that Williams' complaints about the side effects of his medication were "vague [and] subjective." Tr. 938.

10 – FINDINGS AND RECOMMENDATIONS

Second, there was evidence that Williams did not comply with his prescribed medical treatment. Tr. 20. An "individual's statements may be less credible if ... the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, *available at* 1996 WL 374186, at *7. Treatment records from April 2007 show that Williams missed several appointments at Clackamas County Mental Health and did not put forth a good faith effort in therapy. Tr. 20, 332. Moreover, De Fontes noted in April 2010 that Williams was in poor compliance with his prescribed medication. Tr. 16, 20, 936. The ALJ properly inferred from Williams' noncompliance with treatment that the testimony regarding his symptoms was not credible.[3] *See* SSR 96-7p, *available at* 1996 WL 374186, at *7.

Finally, the ALJ found that Williams' activities of daily living contradicted his testimony regarding his mental limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (normal daily activities discredit a claimant's mental limitations). For example, the ALJ noted that while Williams complained of problems staying focused, the record shows he was able to play video games for three hours a day. Tr. 20, 409. Although Williams alleged inability to perform any work due to disability starting at birth, he has "performed several temporary jobs" including work on a Christmas tree farm. Tr. 19, 40-41, 947-49. Williams also performed work for the Forest Service in October, 2010. Tr. 20, 949. The ALJ found that Williams' work activity and activities of daily living contradicted his subjective symptom testimony regarding his ability to concentrate, follow directions, and generally function in a work environment. Tr.

---

[3] While Williams argues that his "poor judgment in seeking mental health treatment" is a manifestation of his mental illness, he does not point to any evidence demonstrating his failure to seek and follow treatment was related to his mental health condition.

11 – FINDINGS AND RECOMMENDATIONS

19. On this record, the ALJ properly rejected Williams' credibility. *Stubbs-Danielson*, 539 F.3d at 1175.

## II. "Other Source" Evidence

Williams next argues that the ALJ improperly rejected "other source" evidence from Williams' mother, Margaret Williams; Williams' aunt, Mandy Herford; and occupational therapist Two Foxes Singing. While only evidence from acceptable medical sources can be used in ascertaining whether Williams has a medically determinable impairment, evidence from "other sources" is permissible when deciding the severity of the impairment. 20 C.F.R. § 416.913(a), (d). "Other sources" include, but are not limited to, sources such as nurse-practitioners, mental health counselors, and educational personnel. *Id.* "Other sources" also include non-medical sources such as parents and other relatives. *Id.* To disregard these opinions, an ALJ need only provide a germane rationale. *Turner v. Comm'r*, 613 F.3d 1217, 1223–24 (9th Cir. 2010). If an ALJ provides "arguably germane reasons" for discounting testimony, the ALJ need not cite specifically to the record or "clearly link" the credibility determination to the reasons stated. *Lewis v. Apfel*, 236 F.2d 503, 512 (9th Cir. 2001). Germane reasons for discrediting a witness's testimony include inconsistency with the medical evidence, and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Williams v. Astrue*, 493 Fed. App'x 866 (9th Cir. 2012). In general the more consistent an opinion is with the record as a whole, the more weight will be given to that opinion. 20 C.F.R. § 416.927(c)(4).

### 1. Margaret Williams

Williams argues that the ALJ improperly rejected the lay testimony of his mother, Margaret Williams. As discussed above, Ms. Williams testified at the hearing and completed a letter describing her son's limitations. Tr. 59, 61, 66, 189-90.

The ALJ rejected Ms. Williams' testimony for several reasons. First, he found that Ms. Williams was not a reliable authority on Williams' limitations because she was unaware that he may be an expectant father. Tr. 21. Second, the ALJ found that Ms. Williams' testimony might be motivated by secondary gain, because she was financially responsible for Williams. *Id.* The ALJ noted evidence in the record that in November, 2009, Ms. Williams called her son's mental health treatment provider "upset and yelling ... thinking they should give him a [diagnosis] so he can get social security." Tr. 20, 409. Finally, Ms. Williams' testimony regarding Williams' limitations was generally repetitious of Williams' own discredited testimony. *Williams,* 493 Fed. App'x at *2-3. These are sufficiently germane reasons to reject Ms. Williams' testimony.

### 2. Mandy Herford

Williams next argues that the ALJ improperly rejected the lay opinion of his aunt, Mandy Herford. As noted, Herford completed a questionnaire describing Williams' limitations. Tr. 165-72.

The ALJ credited Herford's statements that Williams plays video games, helps care for the cat, prepares simple meals, washes dishes, and shops in stores for groceries. Tr. 21. In so far as he did not consider the other limitations listed in Herford's statement, he implicitly rejected them. *See Smolen*, 80 F.3d at 1286 (ALJ effectively rejects an opinion where he ignores it). The ALJ was thus required to provide germane reasons for rejecting Herford's statements. *Turner*, 613 F.3d at 1223-24.

The ALJ properly rejected Herford's statements because they were contradicted by medical evidence in the record. *Bayliss*, 427 F.3d at 1218. Robert Henry, Ph.D., opined that Williams is capable of understanding and remembering simple routine tasks, carrying out short and simple tasks with concentration, persistence, and pace for eight hours a day in a five-day workweek, accepting instructions, getting along with coworkers, and displaying appropriate social behavior in the workplace. Tr. 359-371. Henry's opinion thus contradicted Herford's statements regarding Williams' mental limitations. On this record, the ALJ provided germane reasons for rejecting Herford's statements.[4] The ALJ's rejection of Herford's lay opinion should be upheld.

### 3. Occupational Therapist Two Foxes Singing

Williams argues, finally, that the ALJ improperly rejected the findings of occupational therapist Two Foxes Singing, and thus failed to incorporate all of his mental impairments into the RFC. Pl. Opening Br. 9. As noted, Singing opined that Williams has poor interpersonal skills and has difficulty getting along with peers and supervisors.[5] Tr. 943.

The Commissioner concedes that the ALJ did not provide any reasons for rejecting the limitations assessed by Singing, and as a consequence, the RFC did not include those limitations.[6] Def. Br. 10. The Commissioner argues, however, that the omission of Singing's opinion from the RFC was harmless error because Singing's opinion characterizes Williams' performance in a "team setting," and the VE testified that the occupations of laundry laborer

---

[4] The fact that the ALJ did not directly link these reasons to his rejection of Herford's opinion is not legally significant. *See Lewis*, 236 F.2d at 512.

[5] Williams suggests that Singing's opinion articulates limitations associated with Williams' conduct disorder, which was diagnosed by Dr. Sacks. Tr. 357.

[6] The ALJ did, however, include at least one limitation in the RFC reflective of Williams' conduct disorder: that he have no public contact. Tr. 18.

14 – FINDINGS AND RECOMMENDATIONS

sorter, cleaner II, and hand packager could be performed by a claimant who "would work best alone, not as part of a team in the workplace." Tr. 70.

The omission of Singing's opinion from the RFC was not harmless. An ALJ's error is harmless when it is "inconsequential to the ultimate nondisability determination." *Molina,* 674 F.3d at 1115. Here, Singing identified limitations such as failure to successfully complete tasks and poor money management skills, which could arguably manifest in any work environment, whether or not Williams was required to work on a team. Moreover, the limitations associated with Williams' interpersonal skills will likely manifest in any work environment where Williams is required to work under a supervisor, whether or not he is required to work as part of a team. Work environments that require the employee to answer to a supervisor arguably include the occupations identified by the VE at the hearing in response to the ALJ's hypothetical. Thus, the ALJ's error in omitting Singing's opinion was not harmless, and should be reversed.

## IV. Hypothetical to the VE

Williams argues that the ALJ's disability determination was flawed because he provided an inadequate hypothetical to the VE. While the ALJ properly rejected the Williams' credibility along with the "other source" evidence from Herford and Ms. Williams, the omission of Singing's opinion was error. Thus, the hypothetical to the VE did not properly include all credible limitations in the record. *See Magallanes,* 881 F.2d at 756–57 (holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record). Therefore, the ALJ erred by submitting an incomplete hypothetical to the VE.

## V. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir.

15 – FINDINGS AND RECOMMENDATIONS

2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348 (*en banc*)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, while the ALJ failed to provide legally sufficient reasons for rejecting Singing's opinion, there are outstanding issues to be resolved before a determination of disability can be made. Specifically, the ALJ should be given the opportunity to formulate a correct RFC reflective of all credible limitations in the record, and take new testimony from the VE regarding whether there exist jobs in significant numbers in the national economy that Williams can perform. Thus, remand for the immediate payment of benefits is not appropriate and this case

should be remanded for further proceedings consistent with these Findings and Recommendations.

## CONCLUSION

I recommend that the Commissioner's final decision in connection with Williams' June 13, 2005, application for SSI benefits be reversed and remanded for further proceedings consistent with these Findings and Recommendations.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Recommendation. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

Dated this 8th day of August, 2013.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

17 – FINDINGS AND RECOMMENDATIONS